UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS S.,

                    Plaintiff,                                **DECISION AND ORDER**

          v.
                                                             1:22-CV-01024 CDH
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

_____

## INTRODUCTION

Plaintiff Douglas S. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"), pursuant to Title XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 10; Dkt. 13; Dkt. 14). For the reasons that follow, the Court grants Plaintiff's motion to the extent the matter is remanded for further administrative proceedings and denies the Commissioner's motion.

## BACKGROUND

On June 30, 2020, Plaintiff protectively filed an application for SSI. (Dkt. 5 at 19, 77).[1] His application was initially denied on January 7, 2021, and upon

_____

[1]      In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

- 1 -

reconsideration on March 26, 2021. (*Id*. at 19, 93-96, 104-11). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 113-15), which was held on December 13, 2021 (*id*. at 31-63). On December 22, 2021, the ALJ issued an unfavorable decision. (*Id*. at 16-30). Plaintiff sought review from the Appeals Council, which denied his request on November 8, 2022. (*Id*. at 5-10). This action followed. (Dkt. 1).

## LEGAL STANDARD

### I.    Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. § 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. § 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and

satisfies the Act's durational requirement, *see id.* § 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id.* § 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 416.920(a)(4)(v).

## II.    Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for disability benefits. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial

- 3 -

evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 30, 2020, the application date. (Dkt. 5 at 21). The ALJ found at step two that Plaintiff had the severe impairment of psoriatic arthritis. (*Id.*).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.*). At step three, the ALJ particularly considered the requirements of Listing 14.09. (*Id.* at 21-22).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. § 416.967(b) with the additional limitations that:

> [Plaintiff] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, can sit for 6 hours, standing for 6 hours and walk for 6 hours in an eight hour day, can frequently reach overhead and in all

other directions with the left upper extremity, can frequently handle and finger items bilaterally, can occasionally climb stairs, ramps, ropes, ladders and scaffolds, can occasionally balance, stoop, kneel, crouch and crawl and occasionally work in vibration.

(*Id.* at 22).

The ALJ then proceeded to step four and found that Plaintiff was able to perform his past relevant work as a structural engineer. (*Id.* at 26). The ALJ accordingly concluded that Plaintiff had not been under a disability as defined in the Act since June 30, 2020, the application date. (*Id.*).

## II.    <u>Remand for Further Administrative Proceedings is Required</u>

Plaintiff argues that the ALJ committed reversible error because: (1) he failed to fulfill his duty to develop the record; (2) he failed to consider at step two whether Plaintiff's left elbow epicondylitis and left elbow degenerative osteoarthritis were severe impairments; (3) his finding regarding Plaintiff's ability to reach, handle, and finger is unsupported by substantial evidence; and (4) he failed to appropriately consider the consistency of Plaintiff's allegations with the evidence of record. (Dkt. 10-1 at 15-23). For the reasons that follow, the Court agrees that the ALJ failed to appropriately develop the record and that this error requires remand. The Court accordingly need not and does not reach Plaintiff's other arguments.

"[T]he ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ's duty in this regard "arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination[.]" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). However, "the ALJ's affirmative duty to expand the

records does not extend *ad infinitum.*" *Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) (citation and alterations omitted). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation omitted).

Plaintiff argues that there was an obvious gap in the administrative record in this case, because the record "contains a single report from the Plaintiff's primary care physician dated September 20, 2021 while the record clearly indicates that there would be additional records from this source for the relevant time period." (Dkt. 10-1 at 16). Indeed, the only report in the record from Plaintiff's primary care physician, Dr. Nadezhda Polataiko, is from an annual physical examination performed on September 30, 2021. (Dkt. 5 at 417-36). However, on December 1, 2021, Plaintiff's representative sent a letter to the ALJ advising that records had been requested from Plaintiff's Dr. Polataiko's practice "for dates 1/1/2020 to present" but had not been received. (*Id.* at 263). At the hearing before the ALJ, Plaintiff's representative stated that the record was "complete" because the documents identified in his letter were "coming." (*Id.* at 35). However, it appears that no such further records ever came from Dr. Polataiko's practice.

Defendant argues that the absence of further records from Dr. Polataiko did not create an obvious gap in the administrative record. (Dkt. 13-1 at 7). The Court disagrees. The ALJ found Plaintiff's allegations "not fully consistent with the medical evidence" in part because he determined that they were not substantiated by

complaints in his treatment records. (Dkt. 5 at 24). However, the records of Plaintiff's initial rheumatological consultation on August 25, 2020, indicate that Plaintiff had begun suffering swelling and joint pain and stiffness two years prior and had been referred by Dr. Polataiko. (*Id.* at 287). Similarly, orthopedic specialist Dr. John Callahan documented on June 15, 2020, that Plaintiff presented with "bilateral hand pain that has been ongoing for about 2-3 years" and that he "was previously seen by PCP who referred him here." (*Id.* at 303).

Plaintiff also testified before the ALJ that "it took a year and a half from the time that [he] first went to [his] PCP until [he] was able to get . . . Humira." (*Id.* at 48). The single September 2021 report from Dr. Polataiko physician lists Humira as one of Plaintiff's medications. (*Id.* at 436). Taken together, this evidence leads to the obvious conclusion that Plaintiff was seen by Dr. Polataiko for complaints related to his severe impairment of psoriatic arthritis and that those treatment records— potentially documenting years' worth of complaints—were missing from the administrative record. *See Rohauer v. Comm'r of Soc. Sec.*, No. 18-CV-795, 2020 WL 1330700, at *4 (W.D.N.Y. Mar. 23, 2020) (finding obvious gap in the administrative record where "there were periods of time during which Plaintiff was apparently under treatment, for which there were no records").

Defendant's additional arguments regarding this issue are equally unpersuasive. Defendant argues that Plaintiff "cursorily asserts that the ALJ should have sought out evidence from Dr. Polataiko without identifying what that evidence might show." (Dkt. 13-1 at 7). But it is a reasonable conclusion that the evidence from

Dr. Polataiko might contain substantiating complaints regarding his pain, which could reasonably be expected to have influenced the ALJ's decision.

Defendant also cites cases in which courts have found that an ALJ discharged his or her duty to develop the record by "inquiring as to what records might be missing from the record and providing Plaintiff's counsel the opportunity to obtain and submit those records, the ALJ properly discharged his duty to develop the record." (*Id*. at 8 (citing *Melton v. Colvin*, 13-CV-6188 MAT, 2014 WL 1686827, at \*8 (W.D.N.Y. Apr. 29, 2014) and *Graber v. Comm'r of Soc. Sec.*, No. 1:19-CV-00146 (JJM), 2020 WL 3989345, at \*5 (W.D.N.Y. July 15, 2020)). But that is not what happened here. When the ALJ asked Plaintiff's representative about outstanding records, Plaintiff's representative stated that the record was complete because the additional records were "coming." (Dkt. 5 at 35). There is no indication that the ALJ thereafter held the record open to afford an opportunity for additional records to arrive. To the contrary, the hearing occurred on December 13, 2021, and the ALJ issued his decision eight days later, on December 22, 2021. This is unlike *Graber*, where the ALJ "held the record open for two weeks for plaintiff's counsel to provide . . . records, which were eventually produced," 2020 WL 3989345, at \*5, or *Melton*, where the plaintiff's attorney submitted some additional records after the hearing and the ALJ "noted in her written decision that said decision was completed more than 30 days after the hearing occurred, allowing more than sufficient time for the submission of the identified records," 2014 WL 1686827, at \*8 (quotation omitted).

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity

was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (quotation omitted). Remand is therefore warranted, so that proper efforts may be made to fill the gaps in the administrative record. Having reached this conclusion, the Court need not and does not reach Plaintiff's remaining arguments.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings, and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:        March 31, 2026
              Rochester, New York

- 9 -